IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Fargo Baseball LLC d/b/a Fargo-Moorhead RedHawks,<br><br>                    Plaintiff,<br>vs.<br><br>Midstream Lighting Holding Inc., Midstream Lighting Inc., Athletic Lighting Solutions Inc., James McCarty, Gail McNulty, Don Schoen,<br><br>                    Defendants. | Case No:<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Fargo Baseball LLC d/b/a the Fargo-Moorhead RedHawks, for their Complaint against Midstream Lighting Holding Inc.; Midstream Lighting Inc.; Athletic Lighting Solutions Inc.; James McCarty; Gail McNulty; and, Don Schoen state and allege as follows:

### PARTIES

[¶1]    Plaintiff Fargo Baseball LLC d/b/a the Fargo-Moorhead RedHawks ("RedHawks") is a Minnesota limited liability company with its principal place of business in Fargo, North Dakota.

[¶2]    Defendant Midstream Lighting Inc., ("Midstream US") is an Ohio corporation.

[¶3]    Defendant Midstream Holding Inc. ("Midstream Holding") is a Delaware Corporation and the parent company of Midstream Lighting, Inc.

1

[¶4]    Defendant Athletic Lighting Solutions Inc. ("ALS") is an Ohio corporation.

[¶5]    Defendant James McCarty ("James") is a resident and citizen of the State of Nevada and the president of Midstream US and ALS.

[¶6]    Defendant Gail McNulty ("Gail") is a resident and citizen of the State of Iowa and the VP of Business Development for Midstream US and ALS.

[¶7]    Defendant Don Schoen ("Don") is a resident and citizen of the State of Arizona and the Chief Financial Officer of Midstream US and ALS.

[¶8]    Midstream Lighting LTD ("Midstream UK") is a Limited Company with corporate headquarters at Wessex House, 1 Chesham Street, London SW1X 8ND, United Kingdom.

[¶9]    Alexander Krupkin ("Alex") is a co-founder of Midstream UK and Midstream US.

[¶10]   Yuli Grig ("Yuli") is a co-founder of Midstream UK and Midstream US.

[¶11]   The RedHawks operate an independent professional baseball organization in the American Association of Professional Baseball ("AAPB").

[¶12]   In 2024, they sought to replace the lighting for their baseball stadium, Newman Outdoor Field, located in Fargo, North Dakota.

[¶13]   In January 2024, the AAPB and Midstream US entered a Marketing Agreement which references Midstream as "Midstream Lighting AKA in the US as Athletic Lighting Solutions Powered by Midstream."

[¶14]  As a result of the Marketing Agreement, in 2024 the RedHawks entered a Purchase Agreement ("Agreement") with Midstream US for the purchase and installation of lighting for Newman Outdoor Field.

[¶15]  The Agreement, which was drafted by Midstream US, provided North Dakota as the governing law.

[¶16]  In 2025, after issues arose, the RedHawks and Midstream US entered a Contract Cancellation Agreement ("Cancellation").

## JURISDICTION AND VENUE

[¶17]  Jurisdiction in this Court is proper under 28 U.S.C. § 1332(a)(1) because complete diversity exists between the Parties.  Namely, the citizenship of the Plaintiff is Minnesota with its principal place of business in North Dakota while Defendants are based out of Ohio, Arizona and Iowa.

[¶18]  At all relevant times, Midstream UK's website allowed a party to adjust the interface between countries including the countries of United Kingdom and the United States. When interfacing under the United States settings 31 South Main Suite 011 Dayton, Ohio is listed as Midstream US's headquarters.

[¶19]  Minimum contacts exist in North Dakota because, among other things, the Defendants entered the Agreement with Plaintiff for services and construction in North Dakota and agreed for North Dakota to be controlling law in the Contract.

[¶20]  Alex, James, and Gail were also part of a WhatsApp messaging group discussing the Agreement with the RedHawks in Fargo, North Dakota.

[¶21]   This included discussion after the Agreement was entered into regarding specific equipment as part of the Agreement, and the fulfillment of the Agreement.

[¶22]   Minimum contacts also exist because the Defendants were involved with the committing of a tort within or outside of North Dakota.

[¶23]   Minimum contacts also exist because the Defendants entered into the Marketing Agreement with the AAPB, of which the RedHawks are a member.

[¶24]   Venue is proper in the Fargo Division under 28 U.S.C. § 1391(b)(2) because the facts and circumstances giving rise to this claim occurred primarily in Fargo, Cass County, North Dakota.

## BACKGROUND FACTS

### Midstream Lighting

[¶25]   Midstream UK is a designer and manufacturer of advanced, best-in-class LED lighting solutions founded by Yuli and Alex in 2009. https://www.midstreamlighting.com/about-us/ (July 14, 2025).

[¶26]   Midstream UK desired to expand into the United States and opened a US headquarters in 2019 based in Miami, Florida. https://www.midstreamlighting.com/about-us/ (July 14, 2025).

[¶27]   On April 11, 2022, Midstream Holding was created.

[¶28]   Midstream US was incorporated by Alex the same day.

[¶29]   Midstream Holding is the parent company of Midstream UK's affiliate Midstream US. *Ohio SOS Report, Delaware Entity Report, Porter Letter.*

[¶30]   On October 12, 2022, Midstream US opened its Ohio-based headquarters and named James as President and Gail as VP of Marketing. https://www.midstreamlighting.com/news/midstream-lighting-boosts-north-america-operations-with-ohio-based-headquarters/ (accessed July 14, 2025).

[¶31]   As a way for Midstream UK, Yuli, and Alex to communicate with Midstream US, Alex created a WhatsApp group message called "Midstream US" in January 2022.

```
1/20/22, 1:27 PM - Alexander Krupkin created group "Midstream US"
```

[¶32]   Midstream UK's website, Midstreamlighting.com, allows you to adjust the interface between countries.  When using the United Kingdom interface its states its offices are London, UK and Dayton, Ohio.  When using the United States interface it states its office is in Dayton, Ohio.

[¶33]   Midstream UK and Midstream US utilize the same social media accounts for marketing.

```
1/3/24, 4:23 PM - Gail McNulty: I believe Sophie is also posting our ABCA post on the Midstream  page! That's super helpful😍  Thank you!!
```

## US Sports Expansion

[¶34]   Sports lighting is a core business for Midstream UK and Midstream US. https://www.midstreamlighting.com/sectors/sports/ (July 14, 2025).

[¶35]   In July 2023 Midstream US celebrated the addition of Ken Brechtel as V.P. of Sales for Major Projects at Midstream US both internally and through extensive press releases. https://x.com/edisonreport/status/1682153832598638593?s=48&t=FLBnQASDEjbLZnK307X29Q; https://www.athleticbusiness.com/industry-press-room/press-

release/15542764/midstream-lighting-inc-midstream-lighting-welcomes-new-vp-of-sales-for-major-projects (accessed July 14, 2025).

```
1/20/22, 1:27 PM - Alexander Krupkin created group "Midstream US"
7/20/23, 4:01 PM - James McCarty added you
7/20/23, 4:02 PM - Ken Brechtel: Got it
7/20/23, 4:02 PM - James McCarty: Hello, Ken!
7/20/23, 4:02 PM - Ken Brechtel: Hello James!
7/20/23, 4:02 PM - Eliza Hildreth: Yay welcome, Ken!!
7/20/23, 4:09 PM - Alexander Krupkin: Welcome Ken
7/20/23, 4:11 PM - Ken Brechtel: Thank you!!
7/20/23, 8:06 PM - James McCarty: https://twitter.com/edisonreport/status/1682153832598638593?s=48&t=FLBnQASDEjbLZnK307X29Q
7/20/23, 8:07 PM - Gail McNulty: 😍 Welcome Ken!! Here we go!!
7/20/23, 8:17 PM - Ken Brechtel: This is crazy!
7/22/23, 11:07 AM - James McCarty: This is like a Hollywood script...
```

[¶36]  "[W]e are thrilled to have Ken join us as our new VP of Sales for Major Projects" said James. https://www.athleticbusiness.com/industry-press-room/press-release/15542764/midstream-lighting-inc-midstream-lighting-welcomes-new-vp-of-sales-for-major-projects (accessed July 14, 2025).

**Midstream US and ALS**

[¶37]  While celebrating the addition of Ken Brechtel, Midstream US was apparently underperforming.

[¶38]  Midstream Holding allegedly stopped funding Midstream US in September 2023. *Porter Right Letter*.

[¶39]  While Midstream Holding apparently no longer wanted to engage in any further direct business within the U.S., it then seemingly allowed the Midstream US executive team of James, Gail, and Don to form ALS which was incorporated in Ohio on September 7, 2023. *ALS Articles of Incorporation.*

[¶40]  Either Midstream Holding's claim that it no longer wanted to engage in business within the US was a lie or Midstream Holding, and by extension Midstream UK, was still supporting ALS.

[¶41] There was no change in employment agreements or customer contracts, social media posts continued under Midstream Lighting, Midstream UK continues listing Dayton Ohio as an office location, and as will be explained later, employees and executives of ALS appear to have retained access to bank account access of Midstream US. *Midstream Lighting Facebook Post 2024 & 2025; Midstream Linked In;* https://www.midstreamlighting.com/us/contact-us/ (accessed July 14, 2025).

[¶42] Additionally, even after the alleged split from Midstream US, Yuli and Alex continued to consistently talk with the alleged former Midstream US executives, now a part of ALS, in the same Midstream US WhatsApp messages.

```
1/1/24, 3:58 PM - Yuli: 2024 is the year of great many sales and projects !!! Let's do it !
1/1/24, 4:44 PM - James McCarty: Yes! Big 24!!!!
1/3/24, 4:17 PM - Alexander Krupkin: Good luck at the show
1/3/24, 4:17 PM - James McCarty: Thank you! Should be a good one!
```

[¶43] They were also aware the new company ALS was posting on Midstream UK's social media under Midstream Lighting and not ALS as an affiliate of Midstream.

```
1/3/24, 4:17 PM - Alexander Krupkin: Good luck at the show
1/3/24, 4:17 PM - James McCarty: Thank you! Should be a good one!
1/3/24, 4:18 PM - Alexander Krupkin: <Media omitted>
1/3/24, 4:23 PM - Gail McNulty: I believe Sophie is also posting our ABCA post on the Midstream  page! That's super helpful💗 Thank you!!
```

## American Association of Professional Baseball and Sports Lighting

[¶44] The American Association of Professional Baseball ("AAPB") is an independent baseball league. The RedHawks became a part of the AAPB in 2011.

[¶45] In January 2024, the AAPB and Midstream US entered a Marketing Agreement which references Midstream as "Midstream Lighting AKA in the US as Athletic Lighting Solutions Powered by Midstream." *Marketing Agreement.* As part of

this agreement, Midstream US became the exclusive and preferred supplier of the Association within the "Sports Lighting" category. *Id*. at #2.

**RedHawks Purchase Agreement for Sports Lighting**.

[¶46]  As part of its operations, the RedHawks play home baseball games at Newman Outdoor Field in Fargo, North Dakota and require sports lighting.

[¶47]  On October 22, 2024, the RedHawks entered a Purchase Agreement with Midstream US to supply new lighting to replace its aging lighting.

[¶48]  The Agreement required Midstream US to sell, transfer, and deliver to RedHawks the following:

- 68 Midstream Symmetry R1 100 S1 (RV) (5000K) LED Sports Lighting Fixtures
- 47 Midstream Symmetry R1 100 NS (RV) (5000K) LED Sports Lighting Fixtures
- 20 RGB (Color) Sports Lighting Fixtures
- (1) CBSSW-450-002, Synapse Wireless Control Hub & Commissioning

("Equipment")  *Agreement at #7.*

[¶49]  Additionally, Midstream US was to provide, through subcontractors, the design, layout, testing and commissioning for the Equipment and Installation of the Equipment (collectively, "Services").  *Agreement at #10 and Exhibit A.*

[¶50]  For this, the RedHawks agreed to pay $452,999 for Equipment and Services with payment of 50% at the time of the order, 25% upon delivery, and 25% upon completion.  *Agreement at #12.*  Additionally, the RedHawks were responsible for paying $17,611.88 in applicable sales taxes.  *Agreement at #12-13.*

[¶51]  Delivery of the Equipment was to occur in 8-12 weeks with installation projected to be completed 14-17 days after receipt of Equipment and in time for the official start of the baseball season on April 31, 2025.  *Agreement at #14.*

[¶52]  The Agreement, which was prepared by Midstream, and not by the RedHawks, is void of any identification of ALS as the entity selling the lighting.

[¶53]  The Agreement has the Midstream Lighting logo as found on their website, lists Midstream UK's Dayton, Ohio office, as the seller and warranty contact, and is signed by James on behalf of Midstream US as President.

[¶54]  The RedHawks contract was celebrated by Midstream UK, Midstream US, ALS, and Alex.

```
10/23/24, 6:54 AM - Alexander Krupkin: Morning all
10/23/24, 6:54 AM - Alexander Krupkin: Congrats on the fargo order
10/23/24, 6:54 AM - Alexander Krupkin: I need to urgently get it setup on the system
10/23/24, 6:54 AM - Alexander Krupkin: and start production planning
10/23/24, 6:55 AM - Alexander Krupkin: we have loaded more then 1000 floodlights into production with orders coming in everyday, so need to get ahead of this
10/23/24, 6:57 AM - Alexander Krupkin: production shutdowns email will come shortly
10/23/24, 7:34 AM - Alexander Krupkin: <Media omitted>
10/23/24, 7:34 AM - Alexander Krupkin: please confirm
10/23/24, 9:36 AM - Eliza Hildreth: Hi Alex -

We'll have the PO over to you today. Per our design #A-23-015:
- 47 Symmetry R1100 NS (RV) (5000K)
- 68 x Symmetry R1100 S1 (RV)(5000K)
```

[¶55]  Alex and James, and thus Midstream US, Midstream UK, Midstream Holding, and ALS knew of the RedHawks order and coordinated production of the lights.

```
10/23/24, 9:36 AM - Eliza Hildreth: Hi Alex -

We'll have the PO over to you today. Per our design #A-23-015:
- 47 Symmetry R1100 NS (RV) (5000K)
- 68 x Symmetry R1100 S1 (RV)(5000K)
10/23/24, 9:36 AM - Eliza Hildreth: <Media omitted>
10/23/24, 9:36 AM - Alexander Krupkin: Is this correct?
10/23/24, 9:45 AM - Eliza Hildreth: Yes sir that is correct, although I'm looking for confirmation on voltage @17165364005 are you able to confirm?
10/23/24, 9:46 AM - James McCarty: Hold on.
10/23/24, 9:48 AM - Alexander Krupkin: We dont have stock of the 120-277v option
10/23/24, 9:48 AM - Alexander Krupkin: FYI
10/23/24, 9:49 AM - James McCarty: Its not going to be that
10/23/24, 9:50 AM - James McCarty: It is most likely 480
10/23/24, 9:50 AM - Alexander Krupkin: Ok just so you know
10/23/24, 10:12 AM - Ken Brechtel: 480
10/23/24, 10:12 AM - Ken Brechtel: Confirmation From client
10/24/24, 12:08 PM - Alexander Krupkin: Hello me again here
10/24/24, 12:08 PM - Alexander Krupkin: Your sales assistant
10/24/24, 12:08 PM - James McCarty: Hello
10/24/24, 12:09 PM - James McCarty: The anti sales department
10/24/24, 12:09 PM - Alexander Krupkin: We need to put those units into production.
10/24/24, 12:09 PM - Alexander Krupkin: We have a factory shutdown for one week starting Wednesday
10/24/24, 12:09 PM - Alexander Krupkin: I want to get this order in
10/24/24, 12:10 PM - Alexander Krupkin: At the moment, anticipated delivery date meaning goods ready it is middle of January
10/24/24, 12:10 PM - Alexander Krupkin: Maybe, third week of January
```

```
11/18/24, 11:08 AM - James McCarty: Fargo coming
11/18/24, 11:08 AM - Alexander Krupkin: Coming in what sense ?
11/18/24, 11:08 AM - James McCarty: We are sending you a PO
11/18/24, 11:08 AM - Alexander Krupkin: Ok great
```

[¶56]  The RedHawks received Invoice #1 from Midstream US for $235,305.44, 50% of the order, and directions to send the funds us Midstream US's bank account. *Invoice #1*. The RedHawks paid the full invoice (referred to hereafter as the "Deposit") by wire to. *US Bank wire report as of November 7, 2024.*

[¶57]  Eleven days after receiving the wire, James sent the PO for the RedHawks to Alex                    and                    Midstream                    UK.

```
11/18/24, 11:0/ AM - James McCarty: Howdy
11/18/24, 11:08 AM - James McCarty: Fargo coming
11/18/24, 11:08 AM - Alexander Krupkin: Coming in what sense ?
11/18/24, 11:08 AM - James McCarty: We are sending you a PO
11/18/24, 11:08 AM - Alexander Krupkin: Ok great
```

[¶58]  There is no evidence that Midstream UK, Alex, or Yuli had any concerns with Midstream US and certainly they never reached out to the RedHawks.

**Breach and Cancellation.**

[¶59]  Despite Midstream Holding allegedly discontinuing funding of Midstream US in 2023 and the creation of ALS by the Midstream US executive team, the $235,305.44 Deposit made by the RedHawks was directed to a Midstream US account.

[¶60]  These funds were then transferred to an account operated by the ALS, which Midstream Holding and Midstream US did nothing to prevent. *Porter Letter.*

[¶61]  All of this was unknown to the RedHawks.

[¶62]  Midstream US failed to deliver the Equipment and begin Services in breach of the Agreement.

## ALS Financial Difficulties, and breach of another contract

[¶63]   During this time ALS apparently had financial difficulties.

[¶64]   Without Midstream UK's financial backing, ALS resorted to (and was not preventing from) transferring funds from Midstream US's bank account into its own.

[¶65]   On April 17, 2025, the RedHawks (not knowing the details of the relationship or lack of relationship between Midstream UK, Midstream US, and ALS) and Midstream US agreed to a Contract Cancellation which required Midstream US to return the $235,305.44 Deposit along with interest and legal fees associated with the transaction of $14,600 by "12 Noon" Central Standard Time on Tuesday, April 23, 2025. *Contract Cancellation.*

[¶66]   Unbeknownst to the RedHawks, Midstream US did not have the funds to repay the $235,305.44 Deposit.

[¶67]   James intentionally deceived the RedHawks into believing they had funds to repay the RedHawks. *See text messages; see also Finfire letter.*

[¶68]   The same day the RedHawks and Midstream US entered the Cancellation, James and ALS appear to have begun working with FinFire, an artificial intelligence financial technology company, to find additional funding (though it is also possible this was simply a delaying tactic).

[¶69]   Midstream US, ALS, and James breached the Cancellation by only paying $12,000 to the RedHawks which they received after the noon deadline on April 23. *U.S. Bank Account Dashboard.*

[¶70]  As a result of Defendants' actions and inactions, the RedHawks have incurred damages and were required to find a new lighting supplier.

[¶71]  The RedHawks have attempted to recover the agreed funds to no avail and have not received a penny of the remaining $237,905.44 plus interest they are owed under the Cancellation.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT, PURCHASE AGREEMENT – MIDSTREAM US

[¶72]  Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶73]  The Agreement was a binding contract with Midstream US.

[¶74]  Plaintiff met its obligations under the Agreement.

[¶75]  Midstream US breached its obligations under the Agreement by not providing Equipment and Services under the terms of the Agreement.

[¶76]  Plaintiff is entitled to damages, including, but not limited to such damages that would place them in the same position as if the Agreement had been performed.

[¶77]  Plaintiff is also entitled to a full refund of its Deposit plus interest and attorney fees as allowed by law.

[¶78]  As a direct and proximate result of Midstream US's breach of contract, Plaintiff has been damaged in an amount in excess of $75,000.00.

## COUNT II
## BREACH OF CONTRACT, PURCHASE AGREEMENT – ALS & MIDSTREAM

[¶79]  Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶80]  The Agreement was a binding contract with Midstream US, but to the extent ALS was doing business as Midstream US, then the Agreement is binding upon ALS.

[¶81]  Plaintiff met its obligations under the Agreement.

[¶82]   ALS breached its obligations under the Agreement by not providing Equipment and Services under the terms of the Agreement.

[¶83]  As an undisclosed principal, Midstream US also is in breach and liable.

[¶84]  Under North Dakota law, Plaintiff is entitled to damages, including, but not limited to such damages that would place them in the same position as if the Agreement had been performed.

[¶85]  Plaintiff is also entitled to a full refund of its Deposit plus interest and attorney fees as allowed by law.

[¶86]  As a direct and proximate result of ALS and Midstream US's breach of contract, Plaintiff has been damaged in an amount in excess of $75,000.00.

## COUNT III
## BREACH OF CONTRACT, CONTRACT CANCELLATION – MIDSTREAM US

[¶87]  Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶88]  The Cancellation was a binding contract with Midstream US.

[¶89]  Plaintiff met its obligations under the Cancellation.

13

[¶90]  Midstream US breached its obligation under the Cancellation by failing to return the agreed upon funds.

[¶91]  Under North Dakota law, Plaintiff is entitled to damages, including, but not limited to such damages that would place them in the same position as if the Agreement had been performed.

[¶92]  Plaintiff is also entitled to a full refund of its Deposit plus interest and attorney fees as allowed by law.

[¶93]  As a direct and proximate result of Midstream US's breach of contract, Plaintiff has been damaged in an amount in excess of $75,000.00.

## COUNT IV
## BREACH OF CONTRACT, CONTRACT CANCELLATION –ALS & MIDSTREAM

[¶94]  Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶95]  The Cancellation was a binding contract between Plaintiff and Midstream US, but to the extent ALS was doing business as Midstream US, ALS breached its obligation under the Cancellation.

[¶96]  Plaintiff met its obligations under the Cancellation.

[¶97]  To the extent ALS was doing business as Midstream US, ALS breached its obligation under the Cancellation by failing to return the agreed funds.

[¶98]  As an undisclosed principal, Midstream US also is in breach and liable.

[¶99]  Under North Dakota law, Plaintiff is entitled to damages, including, but not limited to such damages that would place them in the same position as if the Agreement had been performed.

[¶100] Plaintiff is also entitled to a full refund of its Deposit plus interest and attorney fees as allowed by law.

[¶101] As a direct and proximate result of ALS and Midstream US's breach of contract, Plaintiff has been damaged in an amount in excess of $75,000.00.

## COUNT V
## CONVERSION – MIDSTREAM US & ALS

[¶102] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶103] Midstream US converted property belonging to Plaintiff.

[¶104] To the extent ALS was doing business as Midstream US then ALS converted the property.

[¶105] Plaintiff sent the Deposit to the requested Midstream US bank account under the Agreement.

[¶106] Plaintiff and Midstream US/ALS contracted for the return of funds plus interest in the Cancellation.

[¶107] Midstream US/ALS failed to return the funds converting the property belonging to Plaintiff.

[¶108] Midstream US and ALS were acting in concert or should otherwise be held jointly and severally liable.

15

[¶109] Plaintiff is entitled to damages as a result of such conversion as allowed by law, including, but not limited to, N.D.C.C. § 32-03-23.

## COUNT VI
## FRAUDULENT MISREPRESENTATION– MIDSTREAM US

[¶110] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶111] Midstream US directly represented its ability or intent to make sufficient payment under the Cancellation.

[¶112] Midstream US knew this fact to be false as it did not have funds available to perform the Cancellation.

[¶113] Midstream US intended to induce Plaintiff to act to prevent litigation.

[¶114] Plaintiff, relying upon Midstream US's false representations, entered into the Cancellation.

[¶115] As a result of and in reliance upon these misrepresentations, the Plaintiff failed to take advantage of other opportunities available to them to pursue resolution.

[¶116] Plaintiff has been harmed by incurring expenses they would not have incurred and lost opportunities they would have taken advantage of solely as a result of Midstream US's fraudulent misrepresentation. These damages are not fully known at this time but will be developed and proven at trial.

## COUNT VII
## FRAUDULENT MISREPRESENTATION– ALS

[¶117] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶118] Both the Agreement and Cancellation are absent any indication that ALS is doing business as Midstream US.

[¶119] James fraudulently misrepresented his employment with Midstream US.

[¶120] James knew he was not the president of Midstream US and intended to induce Plaintiff into the Agreement and Cancellation.

[¶121] ALS directly misrepresented its ability or intent to make sufficient payment under the Cancellation.

[¶122] ALS knew this fact to be false as it did not have funds available to perform the Cancellation.

[¶123] ALS intended to induce Plaintiff to act to prevent litigation.

[¶124] Plaintiff relying upon ALS's false representations entered into the Cancellation.

[¶125] As a result of and in reliance upon these misrepresentations, the Plaintiff failed to take advantage of other opportunities available to them to pursue resolution.

[¶126] Plaintiff has been harmed by incurring expenses it would not have incurred and lost opportunities it would have taken advantage of solely as a result of ALS's fraudulent misrepresentation.  These damages are not fully known at this time but will be developed and proven at trial.

## COUNT VIII
## FRAUDULENT MISREPRESENTATION– JAMES

[¶127] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶128] James directly represented he was the president of Midstream US, but James and the executive team of Midstream US had left and created ALS.

[¶129] Both the Agreement and Cancellation are absent any indication that ALS is doing business as Midstream US.

[¶130] James fraudulently misrepresented the status and ability of Midstream US and the status and meaning of his employment with Midstream US.

[¶131] James knew he was not the president of Midstream US (or that at least Midstream was no longer functioning) and intended to induce Plaintiff into the Agreement and Cancellation.

[¶132] Additionally, James fraudulently misrepresented the ability or intent of Midstream to make sufficient payment under the Cancellation.

[¶133] James knew there were insufficient funds to perform the Cancellation and fraudulently misrepresented this fact.

[¶134] James intended to induce Plaintiff to act to prevent litigation.

[¶135] Plaintiff relying upon James's false representations entered into the Cancellation.

[¶136] As a result of and in reliance upon these misrepresentations, the Plaintiff failed to take advantage of other opportunities available to them to pursue resolution.

[¶137] Plaintiff has been harmed by incurring expenses it would not have incurred and lost opportunities it would have taken advantage of solely as a result of James's fraud. These damages are not fully known at this time but will be developed and proven at trial.

## COUNT IX
## NEGLIGENT MISREPRESENTATION – MIDSTREAM US

[¶138] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶139] Midstream US negligently represented their ability or intent to make sufficient payment under the Cancellation.

[¶140] Midstream US should have known this fact to be false as it did not have funds available to perform the Cancellation.

[¶141] Plaintiff relying upon Midstream US's negligent representations entered into the Cancellation.

[¶142] As a result of and in reliance upon these misrepresentations, the Plaintiff failed to take advantage of other opportunities available to them to pursue resolution.

[¶143] Plaintiff has been harmed by incurring expenses it would not have incurred and lost opportunities it would have taken advantage of solely as a result of Midstream US's negligent misrepresentation.  These damages are not fully known at this time but will be developed and proven at trial.

## COUNT X
## NEGLIGENT MISREPRESENTATION – ALS

[¶144] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶145] ALS directly negligently represented their ability or intent to make sufficient payment under the Cancellation.

19

[¶146] ALS should have known this fact to be false as it did not have funds available to perform the Cancellation.

[¶147] Plaintiff relying upon ALS's negligent representations entered into the Cancellation.

[¶148] As a result of and in reliance upon these misrepresentations, the Plaintiff failed to take advantage of other opportunities available to them to pursue resolution.

[¶149] Plaintiff has been harmed by incurring expenses it would not have incurred and lost opportunities it would have taken advantage of solely as a result of ALS's negligent misrepresentation.  These damages are not fully known at this time but will be developed and proven at trial.

## COUNT XI
## NEGLIGENT MISREPRESENTATION – JAMES

[¶150] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶151] James negligently misrepresented he was the president of Midstream US.

[¶152] Both the Agreement and Cancellation are absent any indication that ALS is doing business as Midstream US.

[¶153] James negligently  misrepresented his employment with Midstream US and negligently misrepresented the relation or lack of relationship between Midstream and ALS.

[¶154] James negligently misrepresented the ability or intent of Midstream or ALS to make sufficient payment under the Cancellation.

[¶155] James should have known this fact to be false as neither had funds available to perform the Cancellation.

[¶156] Plaintiff relying upon James's negligent misrepresentations entered into the Cancellation.

[¶157] As a result of and in reliance upon these misrepresentations, the Plaintiff failed to take advantage of other opportunities available to them to pursue resolution.

[¶158] Plaintiffs have been harmed by incurring expenses they would not have incurred and lost opportunities they would have taken advantage of solely as a result of James's negligent misrepresentation. These damages are not fully known at this time but will be developed and proven at trial.

## COUNT XII
## DECEIT – MIDSTREAM US

[¶159] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶160] The Cancellation was a valid contract. Under the Cancellation Midstream US was required to return $235,305.44 to Plaintiff.

[¶161] In negotiations, Midstream US suggested it would return the money to Plaintiff while knowing this was not possible as they lacked funds to do so.

[¶162] Had the fact that Midstream US did not have sufficient funds been known, then Plaintiff would not have entered the Cancellation.

[¶163] Midstream US clearly had no intention of performing as they entered the Cancellation on April 17, 2023, and only returned $12,000 to Plaintiff on April 23, 2025.

[¶164] As a direct and proximate result of Defendants' deceit, Plaintiff has been damaged in an amount in excess of $75,000.00.

## COUNT XIII
## DECEIT – ALS & MIDSTREAM

[¶165] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶166] The Cancellation was a valid contract in which ALS was required to return $235,305.44 to Plaintiff.

[¶167] In negotiations, ALS indicated it would return the money to Plaintiff while knowing this was not possible as they lacked funds to do so.

[¶168] Had the fact ALS would be unable to return the funds been known, then Plaintiff would not have entered the Cancellation.

[¶169] ALS clearly had no intention of performing as they entered the Cancellation on April 17, 2025, and only returned $12,000 to Plaintiff on April 23, 2025.

[¶170] As an undisclosed principal, Midstream is jointly and severally liable for ALS's deceit.

[¶171] As a direct and proximate result of ALS's deceit, Plaintiff has been damaged in an amount in excess of $75,000.00.

## COUNT XIV
## DECEIT – JAMES

[¶172] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶173] The Cancellation was a valid contract. Under the Cancellation, James as president of Midstream US and/or ALS promised Midstream US would return $235,305.44 to Plaintiff.

[¶174] In negotiations James indicated the money would be returned to Plaintiff while knowing this was not possible as Midstream US and/or ALS lacked funds to do so.

[¶175] Had this been known by Plaintiff, then they would not have entered the Cancellation.

[¶176] James clearly had no intention of performing.

[¶177] As a direct and proximate result of James's deceit, Plaintiff has been damaged in an amount in excess of $75,000.00.

## COUNT XV
## UNJUST ENRICHMENT – MIDSTREAM US

[¶178] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶179] Plaintiff conferred a benefit to Midstream US by providing the $235,305.44 Deposit for Equipment and Services under the Agreement.

[¶180] As Midstream US did not perform under the Agreement, the Cancellation was entered whereby Midstream US agreed to return the initial payment from Plaintiff, plus interest. However, Midstream US again failed to perform.

[¶181] Under the circumstances, it would be unjust and inequitable to permit Midstream US to retain the benefit from its actions.

23

[¶182] The amount of benefit wrongfully retained is at least $223,000.00, plus interest and other fees and costs allowed by law.

## COUNT XVI
## UNJUST ENRICHMENT –ALS

[¶183] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶184] To the extent ALS was doing business as Midstream US, Plaintiff conferred a benefit to ALS by providing the Deposit of $235,305.44 for Equipment and Services under the Agreement.

[¶185] As ALS did not perform under the Agreement, the Cancellation was entered into whereby ALS agreed to return the initial payment from Plaintiff, plus interest. However, ALS again failed to perform.

[¶186] Under the circumstances, it would be unjust and inequitable to permit ALS to retain the benefit from its actions.

[¶187] The amount of benefit wrongfully retained is at least $223,000.00, plus interest and other fees and costs allowed by law.

## COUT XVII
## RESPONDEAT SUPERIOR – MONEY TRANSFER

[¶188] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶189] ALS and/or Midstream US and/or Midstream Holding and/or Midstream UK was aware of actions by its employee/agent James.

[¶190] James had access Midstream US bank accounts.

[¶191] James negligently or otherwise transferred the funds from Midstream US to ALS.

[¶192] This was the direct and proximate cause of Midstream US not having funds to return to Plaintiff according to the Cancellation.

[¶193] As a result, Plaintiff has been damaged in the amount of at least $237,905.44 plus interest and other fees and costs allowed by law.

## COUNT XVIII
## RESPONDEAT SUPERIOR & UNDISCLOSED PRINCIPAL

[¶194] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶195] ALS and/or Midstream US and/or Midstream Holding and/or Midstream UK were aware of actions by its employee/agent James.

[¶196] James's negligent or other misrepresentations caused Plaintiff to enter the Agreement and Cancellation.

[¶197] Both contracts were breached.

[¶198] As a direct and proximate cause of this breach, Plaintiff did not receive the Equipment and Services is contracted for nor the funds in accordance with the Cancellation.

[¶199] ALS and/or Midstream US and/or Midstream Holding and/or Midstream UK are liable for the actions of James under the principal of respondeat superior and/or undisclosed principalship.

[¶200] As a result, Plaintiff has been damaged in the amount of at least $237,905.44 plus interest and other fees and costs allowed by law.

## COUNT XIX
## PROMISSORY ESTOPPEL, PURCHASE AGREEMENT

[¶201] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶202] Midstream US, and to the extent ALS was doing business as Midstream US, then ALS, promised it would provide Equipment and Services to Plaintiff.

[¶203] In reasonable reliance on those promises, Plaintiff provided $235,305.44 to Midstream US.

[¶204] Plaintiff was harmed by its reasonable reliance on Midstream US or ALS's promises, as Plaintiff provided $235,305.44 and did not receive the Equipment and Services under the Agreement.

[¶205] As a result, Plaintiff has been damaged in the amount of at least $235,305.44 plus interest and other fees and costs allowed by law.

## COUNT XX
## PROMISSORY ESTOPPEL, CANCELLATION

[¶206] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶207] Midstream US, and to the extent ALS was doing business as Midstream US, then ALS, promised it would return $249,905.44 to Plaintiff in exchange for Plaintiff not continuing any litigation efforts against Midstream US and its officers or employees.

[¶208] In reasonable reliance on those promises, Plaintiff ceased litigation efforts against Midstream US and its officers and employees.

[¶209] Plaintiff was harmed by its reasonable reliance on Midstream US's promises, as the $249,905.44 was not fully paid to Plaintiff.

[¶210] As a result, Plaintiff has been damaged in the amount of at least $237,905.44 plus interest and other fees and costs allowed by law.

## COUNT XXI
## PIERCING THE CORPORATE VEIL – MIDSTREAM HOLDING

[¶211] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶212] Plaintiff seeks to pierce the corporate veil of Midstream US.

[¶213] On information and belief, Midstream US is liable for the damages suffered by Plaintiff due to the actions, misrepresentation, and fraudulent and deceitful acts of Midstream US, or to the extent ALS is doing business as Midstream US, then ALS, and its employees/agents and officers James, Gail, and Don.

[¶214] On information and belief, at all times material, Midstream Holding operated Midstream US and/or ALS as their alter ego or mere instrumentality, failed to adequately capitalize Midstream US/ALS, failed to observe corporate formalities in conducting the affairs of Midstream US/ALS, and Midstream US/ALS was simply a creation to avoid judgment.

[¶215] It would be fundamentally unfair to allow Midstream Holding to escape personal liability for the debt Midstream US/ALS incurred to Plaintiff and such debt was

incurred as a consequence of the fraudulent conduct of Midstream Holding and its employees/agents.

[¶216] As a result of the conduct, Plaintiff has incurred damages of at least $237,905.44 plus interest and other fees and costs allowed by law.

## COUNT XXII
## PIERCING THE CORPORATE VEIL – ALS

[¶217] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶218] Plaintiff seeks to pierce the corporate veil of ALS (including ALS to the extent doing business as Midstream US)

[¶219] On information and belief, ALS is liable for the damages suffered by Plaintiff due to the actions, misrepresentation, and fraudulent and deceitful acts of ALS and its employees and agents.

[¶220] On information and belief, at all times material, ALS was owned in whole or part by James, Gail, and Don, who used Midstream US as an alter ego or mere instrumentality of ALS, failed to adequately capitalize ALS, failed to observe corporate formalities in conducting the affairs of ALS, caused ALS to incur debt to Plaintiff at a time when ALS was insolvent, improperly diverted assets of ALS, and siphoned funds of ALS.

[¶221] It would be fundamentally unfair to allow James, Gail, or Don to escape personal liability for the debt ALS incurred to Plaintiff and such debt was incurred as a consequence of the fraudulent conduct of James, Gail, or Don, or ALS and its employees.

[¶222] As a result of the conduct, Plaintiff has incurred damages of at least $237,905.44 plus interest and other fees and costs allowed by law.

## COUNT XXIII
## CONSTRUCTIVE TRUST

[¶223] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶224] Defendant Midstream US, and to the extent ALS is doing business as Midstream US, then ALS, holds money which Plaintiff has a claim upon.

[¶225] Plaintiff paid Midstream US/ALS a $235,305.44 Deposit.

[¶226] Defendants, including but not limited to, Midstream Holding, Midstream US, ALS, and James, acting individually or through alter egos, or affiliated entities, wrongfully transferred or retained those funds and failed to return them as required under the Agreement and subsequent Cancellation.

[¶227] Defendants obtained and/or retained the funds through misrepresentations, abuse of a position of trust, inequitable conduct, and with knowledge that they lacked the ability or intent to perform under the terms of the Agreement or Cancellation.

[¶228] As a result, Defendants hold specific and identifiable funds.

[¶229] It would be unjust, inequitable, and morally wrong for Defendants to retain these funds belonging to Plaintiff.

[¶230] Plaintiff seeks a constructive trust be imposed by operation of law under these facts.

## COUNT XXIV
## UNLAWFUL SALES PRACTICES

[¶231] Plaintiff incorporates herein by reference all previous and subsequent paragraphs as if fully stated herein.

[¶232] The Defendants jointly, severally, and in concert, acted, used, and employed deceptive acts, fraud, false pretenses, false promises, and/or misrepresentations with the intent that Plaintiff rely thereon in connection with the sale or advertisement of the Equipment and Services in violation of N.D.C.C. § 51-15-02.

[¶233] As a result of the conduct, Plaintiff has incurred damages of at least $237,905.44 plus interest and other fees and costs allowed by law.

[¶234] **WHEREFORE**, Plaintiff(s) request that judgment be entered against Defendant(s) as follows:

[¶235]      1.      That the Court establish a constructive trust in Plaintiff's favor;

[¶236]      2.      Damages in an amount in excess of $75,000.00, plus pre and post judgment interest as allowed by law;

[¶237]      3.      An award of treble damages, costs, disbursements, and attorney fees as permitted by N.D.C.C. § 51-15-09 and as otherwise allowed by law;

[¶238]      4.      Such further and additional remedies as the Court deems just and equitable.

[¶239] **PLAINTIFF DEMANDS A NINE PERSON JURY TRIAL.**

Dated: August 20, 2025.

*/s/ Joel Fremstad*

Joel Fremstad (ND ID 05541)
Kyle B. Christianson (ND ID 09845)
FREMSTAD LAW FIRM
P.O. Box 3143
Fargo, North Dakota 58108-3143
Phone: (701) 478-7620
joel@fremstadlaw.com
ATTORNEYS FOR PLAINTIFF
